IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| SHENEQUE BAILEY, on behalf of S.C.B, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>Defendant. )<br>_____ ) | Civil No. 3:12cv870 (JAG) |

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* on behalf of her daughter, S.C.B., brought this action to review the Social Security Commissioner's decision denying the application supplemental security income ("SSI") for a child claiming disability from S.C.B.'s attention deficit hyperactivity disorder ("ADHD"). Plaintiff now challenges the ALJ's denial of benefits, arguing that S.C.B. was disabled. (Pl.'s Reply "Pl.'s Mem." (ECF No. 9) at 1.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] For the reasons set forth herein, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 9) be DENIED; Defendant's Motion for Summary Judgment (ECF No. 10) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

I. BACKGROUND

Because Plaintiff challenges whether the ALJ erred in determining that S.C.B. was not disabled under the Social Security Act ("the Act"), S.C.B.'s medical history, S.C.B.'s school records, third-party function reports, and Plaintiff's hearing testimony are summarized below.

A. Medical History

In 2008, when S.C.B. was three years old, Plaintiff complained to her pediatrician that S.C.B. was very hyper and out of control. (R. at 321.) During S.C.B's February 24, 2010 appointment with her pediatrician, Plaintiff indicated that S.C.B. had ADHD and needed medication. (R. at 322.)

On June 4, 2010, S.C.B. sought treatment from Psychiatrist David Gould, M.D., and underwent an initial psychiatric evaluation. (R. at 336.) Plaintiff reported to Dr. Gould that S.C.B. was disrespectful and hyper, got into things, hit and made messes. (R. at 336.) S.C.B. was cooperative during the exam, her appearance was appropriate, her speech was normal and she appeared alert and oriented. (R. at 338.) She had increased energy, but maintained little concentration. (R. at 338.) Dr. Gould diagnosed Plaintiff with ADHD and prescribed Concerta. (R. at 339.)

Plaintiff followed up with Dr. Gould on June 16, 2010, during which S.C.B. continued to exhibit increased energy and decreased concentration. (R. at 335.) She was cooperative, pleasant, alert and oriented. (R. at 335.) Dr. Gould noted no change in S.C.B.'s condition. (R. at 335.) S.C.B was to follow-up in three weeks. (R. at 335.) Over three months later, S.C.B. attended a follow-up appointment on September 28, 2010. (R. at 346.) Dr. Gould indicated that S.C.B. had friends and liked her teachers. (R. at 346.) S.C.B. experienced increased energy,

decreased concentration and overall worsening of her symptoms. (R. at 346.) Dr. Gould prescribed Ritalin for S.C.B. (R. at 346.) Dr. Gould ordered S.C.B. to return for a follow-up appointment a week later. (R. at 346.)

S.C.B.'s next appointment with Dr. Gould occurred on March 28, 2001. (R. at 347.) Though S.C.B. was alert, oriented and pleasant, Dr. Gould noted that S.C.B's symptoms worsened. (R. at 347.) Plaintiff reported that S.C.B. had problems at school. (R. at 347.) During S.C.B.'s next appointment with Dr. Gould on October 17, 2011, S.C.B. appeared hyperactive with increased energy and decreased concentration. (R. at 349.) Plaintiff indicated that S.C.B was repeating kindergarten and that she yelled and screamed. (R. at 349.)

B. School Records

S.C.B.'s school records from Chesterfield County Public Schools indicate that S.C.B. was eligible for special education. (R. at 234.) Her teacher complained that S.C.B. suffered significant attention problems and difficulty demonstrating self-control. (R. at 234.) S.C.B. was diagnosed with ADHD and took Ritalin twice a day. (R. at 234.) During the morning, she yelled, name called, ran through the building, refused to comply with instructions, hit, exhibited inappropriate behavior, used inappropriate language and threw items. (R. at 234.) Her behavior deteriorated throughout the afternoon. (R. at 234.) S.C.B. required redirection to complete tasks and tended to bother other students while working. (R. at 234.) S.C.B. exhibited bullying behaviors, was distracted, lacked awareness of others and became easily frustrated. (R. at 234.) On November 2, 2010, a reading specialist, Carol Cardwell, reported that S.C.B. was distracted during testing, had difficulty writing her name and experienced problems identifying colors, shapes and numbers. (R. at 266.)

On November 18, 2010 and December 1, 20010, Plaintiff underwent an educational evaluation in which the examiner noted that Plaintiff maintained focus during the first testing session with redirection from the examiner. (R. at 269.) S.C.B. demonstrated inconsistency with letter recognition and had difficulty deciphering between numbers and letters. (R. at 271.) However, she could name and identify common household objects. (R. at 271.) Her reading scores were poor and her math scores fell below average, as she demonstrated inconsistency in identifying numbers less than ten. (R. at 272.) Her written language scores were average. (R. at 272.) S.C.B. could copy letters, numbers and words, and could write her name independently. (R. at 272.)

On December 9, 2010, S.C.B.'s speech-language pathologist, Vivian L. Pastore, M.S., completed a speech and language report. (R. at 250.) S.C.B. was cooperative throughout the exam and followed Ms. Pastore's directions. (R. at 251.) S.C.B.'s auditory comprehension and expressive communication scores fell at low average. (R. at 250.) Her articulation was similar to that of her peers. (R. at 251.)

On January 6, 2011, S.C.B. underwent a sociological assessment by a school social worker, Amijearme Butta, M.S.W. (R. at 267.) Plaintiff told Ms. Butta that S.C.B. had difficulty following instructions, was easily distracted and exhibited hyperactivity. (R. at 267.) S.C.B. could cut, color, do puzzles and build with Legos. (R. at 267.) Plaintiff indicated to Ms. Butta that S.C.B. maintains normal sibling interactions. (R. at 267.) Before starting school, S.C.B. participated in pre-kindergarten programs, but had difficulty mastering school readiness skills due to frequent absences and tardiness. (R. at 268.) S.C.B. could perform self-care tasks with prompting and supervision and could prepare breakfast and snacks for herself, but required

constant monitoring to complete chores. (R. at 268.) She enjoyed watching cartoons and playing with dolls, but was bossy and had difficulty sharing. (R. at 268.)

S.C.B. underwent an evaluation by school psychologist Lisa T. Elbine, M.A., on January 21, 2011. (R. at 245.) S.C.B.'s Full Scale Score IQ registered at 85, indicating that she is within the low average range of cognitive functions. (R. at 246.) Her psychomotor speed, cultural knowledge and ability to perform visual categorical activities were average. (R. at 246.) Her word knowledge, ability to analyze and synthesize visual information and verbal reasoning skills fell at the low end of the average range. (R. at 254.) S.C.B. cooperated during the exam and responded well to praise, though she was off task at times. (R. at 246.) Overall, Ms. Elbine opined that S.C.B. may be underestimated, because of her distractibility. (R. at 247.)

    C.    Functioning Reports

On January 9, 2010, Plaintiff completed a Function Report for a child of age 6-12 for S.C.B. (R. at 164.) Plaintiff indicated that S.C.B.'s speech could be understood most of the time by people who knew her well and some of the time by people who did not. (R. at 166.) She talked with friends. (R. at 167.) She could not read capital or small letters, read simple words, understand simple sentences, read or understand stories in books, print letters, print her name, write in longhand, spell short words, write simple stories, add and subtract numbers over 10, recall the days of the week or months, understand money or tell time. (R. at 168.) S.C.B. could walk, run, throw a ball and dress/undress dolls or action figures. (R. at 169.) She could make new friends. (R. at 170.)

5

S.C.B. had the ability to take baths or showers without being held, brush her teeth, choose clothes by herself and eat by herself with a fork, knife and spoon. (R. at 171.) She kept busy on her own. (R. at 172.)

On July 15, 2011, Plaintiff submitted a second Function Report for a child of age 6-12 on behalf of S.C.B. (R. at 209.) Plaintiff reported that sometimes S.C.B. suffered from hearing problems. (R. at 210.) S.C.B.'s speech could be understood some of the time. (R. at 211.) S.C.B. could talk with family and friends, but could not deliver phone messages, repeat stories, tell jokes, explain her actions or use sentences involving "because," "what if" or "should have been." (R. at 212.) S.C.B. had the ability to read capital and small letters and could print her name and some letters. (R. at 213.) She could walk, run, throw and dress/undress a doll. (R. at 214.) She was "still trying to ride a bike" and could not use scissors out of fear that she would misbehave with them. (R. at 214.) S.C.B. could make new friends, but could not get along with adults or teachers. (R. at 215.) S.C.B. brushed her teeth, obeyed safety rules, ate by herself, arrived to school on time and accepted criticism and corrections. (R. at 216.) She kept busy on her own and worked on arts and crafts projects. (R. at 217.)

On June 4, 2010, Plaintiff completed a function report for a child from ages 3-6. (R. at 181.) S.C.B. experienced no difficulty talking. (R. at 183.) She could ask a lot of what, why and where questions, use complete sentences, talk about what she was doing, converse with other children, ask for what she wanted and tell stories about past happenings. (R. at 184.) While S.C.B. experienced difficulty remembering her age and birthday, she could recite numbers up to three and count objects. (R. at 185.) She could catch a large ball, ride a bicycle and wind up a toy. (R. at 186.) She enjoyed being with children of her age, showed affection towards other

6

children and was sometimes affectionate towards her parents. (R. at 186.) She played pretend with other children and could play games like hide and seek. (R. at 186.) However, S.C.B. did not like to share. (R. at 186.)

S.C.B. wet the bed nightly, but could control her bowels and bladder during the day. (R. at 187.) She ate using a fork and spoon by herself, dressed herself with and without help, washed and bathed without help, and brushed her teeth without help. (R. at 187.) S.C.B. lacked the ability to pay attention and stick with a task. (R. at 187.)

On July 15, 2001, Plaintiff submitted a Children's Activities Questionnaire for School Age Children. (R. at 220.) Plaintiff indicated that S.C.B. required help getting ready and getting to school. (R. at 220.) She sometimes participated in school activities and could sometimes participate in afterschool play with friends. (R. at 220.) S.C.B. did not do chores around the house and would not go to bed on time. (R. at 220.)

S.C.B. sometimes got along with Plaintiff and other family members. (R. at 221.) She exhibited disrespect towards teachers, but sometimes got along with classmates and friends. (R. at 221.) S.C.B. did not have a lot of friends, but talked to everybody. (R. at 221.) She became distracted easily, could not finish projects and did not participate in hobbies that involved a lot of time. (R. at 222.) Her teachers reported that S.C.B. experienced problems paying attention in class. (R. at 222.) She was trying to read and she watched cartoons, but could not remember them. (R. at 222.)

D.  Plaintiff's Testimony

Plaintiff testified on behalf of S.C.B. at a hearing on October 11, 2011. (R. at 28.) During the hearing, Plaintiff testified that S.C.B. was six years old and repeating kindergarten.

(R. at 32.) S.C.B. took Adderall for her ADHD. (R. at 40.) She wrote her name backwards, but could recognize her name and tried to read. (R. at 32-33.) S.C.B. got distracted when completing tasks, would not follow instructions and did not pay attention. (R. at 33-35.)

S.C.B could express herself and was articulate. (R. at 36.) She could not play cooperatively with others. (R. at 40.) She could not keep friends and hit her younger brothers. (R. at 41-42, 47.) S.C.B. did not miss school, she could jump, jump rope and kick, and she used age-appropriate scissors. (R. at 47.) She could feed herself, use the toilet alone, brush her teeth, rinse herself in the bath and take her medicine as directed. (R. at 48.) S.C.B. was the correct size for her age and was slim. (R. at 52.)

## II. PROCEDURAL HISTORY

On December 31, 2009, Plaintiff filed an application for SSI for a child under age 18 on behalf of her daughter, S.C.B., due to disability from ADHD. (R. at 11.) The alleged onset date of S.C.B.'s disability was July 31, 2008. (R. at 11.) Plaintiff's claim was denied initially on May 11, 2010, and again on reconsideration on July 30, 2010. (R. at 11.) Plaintiff filed a written request for a hearing on September 20, 2010, and appeared before an ALJ on October 11, 2011, proceeding *pro se*. (R. at 11.) On November 9, 2011, the ALJ denied benefits for S.C.B. (R. at 8.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## III. QUESTION PRESENTED

1. Does substantial evidence support the ALJ's determination that S.C.B. did not functionally equal any of the listings?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted). To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact — if the findings are supported by substantial evidence — are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*, 667 F.3d at 477 (citation omitted). If the ALJ's determination is not supported by substantial evidence on the record or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. § 416.924. The analysis is conducted for the

Commissioner by an ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

A claimant under the age of eighteen is considered disabled if she suffers from a medically determinable physical or mental impairment which results in marked and severe functional limitations, and is expected to result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner uses a three-step process to evaluate the SSI claims of minors. 20 C.F.R. §416.924. At the first step, the ALJ must consider whether the claimant has engaged in "substantial gainful activity" ("SGA").[2] 20 C.F.R. § 416.924(a). If the claimant establishes that she did not engage in SGA, the claimant must prove at the second step that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.924(c). To qualify as a severe impairment that entitles a claimant to benefits under the Act, it must cause more than a minimal effect on one's ability to function. *Id.* If a child suffers from a severe impairment or combination of impairments, the ALJ must lastly determine whether the child's impairment meets, medically equals, or functionally equals an impairment listed in Appendix 1, Part 404, Subpart P, and lasts, or is expected to last, for twelve months or

---

[2] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

result in death. 20 C.F.R. § 416.924(d)(1). In assessing the functional limitations caused by the impairments, the ALJ examines a child claimant's limitations in six areas of development and functioning in order to determine whether she has "marked" limitations[3] in two domains of functioning, or an "extreme" limitation[4] in one domain. 20 C.F.R. § 416.926a(a). The six relevant domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(a)(1).

The standard for reviewing a claim filed on behalf of a child differs based upon the child's age. To determine the proper standard, the social security regulations define a child of preschool age as child from the age of three to the attainment of age six. 20 C.F.R. § 416.926a(g)(2). A school-age child is defined as being between the ages of six to the attainment of age 12. *Id.*

## V. ANALYSIS

### A. The ALJ's Decision

The ALJ noted that S.C.B. was a preschooler at her alleged onset date and was currently a school-age child. (R. at 14.) At step one, the ALJ determined that S.C.B. did not engage in substantial gainful activity during the relevant time. (R. at 14.) At step two, the ALJ found that

---

3     A marked limitation is found when the child claimant's "impairment(s) interferes seriously with [a claimant's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2).

4     An extreme limitation requires that a child claimant's "impairment(s) interferes very seriously with [a claimant's] ability to independently, initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3).

11

S.C.B. had a severe impairment of ADHD. (R. at 14.) However, S.C.B's impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (R. at 14.) At step three, the ALJ determined that S.C.B. did not have an impairment or combination of impairments that functionally equals the severity of the listings. (R. at 14.) Specifically, S.C.B. had less than marked limitation in acquiring and using information. (R. at 17.) She maintained less than marked limitation in attending and completing tasks. (R. at 18.) As to S.C.B. interacting and relating to others, S.C.B. had less than marked limitation. (R. at 20.) S.C.B. had no limitation in moving about and manipulating objects. (R. at 21.) The ALJ determined that no limitation existed as to S.C.B.'s ability to care for herself. (R. at 22.) S.C.B. had no limitation as to her health and well-being. (R. at 22.) Accordingly, the ALJ determined that S.C.B. was not disabled under the Act. (R. at 23.)

> B. Substantial evidence supports the ALJ's determination that S.C.B did not functionally equal any listing.

Plaintiff challenges the ALJ's decision, arguing that S.C.B. is entitled to benefits on the basis that S.C.B. cannot focus and misbehaves at school. (Pl.'s Mem. at 1.) Defendant argues that substantial evidence supports the ALJ's determination that S.C.B.'s condition did not functionally equal any listing. (Def.'s Mot. for Summ. Judg. and Mem. in Supp. "Def.'s Mem." at 14-23.) The Court agrees with Defendant.

> 1. Substantial evidence supports the ALJ's determination that S.C.B. had less than marked limitation acquiring and using information.

The ALJ determined that S.C.B. had less than marked limitation acquiring and using information. (R. at 17.) Preschool children without impairments should be able to perform the following examples of activities: (1) listening to stories, (2) rhyming words, (3) matching letters,

12

(4) counting, (5) sorting shapes, (6) building with blocks, (7) painting, (8) coloring, (9) copying shapes, (10) using scissors, (11) using words to ask questions, (12) give answers, (13) follow directions, (14) describe things, (15) explain what they mean and (16) tell stories that allows them to acquire and share knowledge and experience of the world around them. 20 C.F.R. § 416.926a(g)(2)(iii). School-age children without an impairment in acquiring and using information "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv).

Here, S.C.B. experienced problems identifying colors, shapes and numbers. (R. at 266.) However, Plaintiff noted that S.C.B. could ask a lot of what, why and where questions, use complete sentences, talk about what she was doing, converse with other children, ask for what she wanted and tell stories about past happenings. (R. at 184.) Plaintiff testified that S.C.B. used age appropriate scissors. (R. at 47.) S.C.B.'s school records indicate that she could recite numbers up to three and count objects. (R. at 185.) S.C.B. could cut, color, do puzzles and build with Legos. (R. at 267.) Therefore, substantial evidence supports the ALJ's determination that S.C.B. experienced less than marked limitation in this domain as a preschool child.

Further, while S.C.B. demonstrated inconsistency in identifying numbers less than ten she could copy letters, numbers and words, and could write her name independently. (R. at 272.) Ms. Elbine opined that S.C.B.'s psychomotor speed, cultural knowledge and ability to perform visual categorical activities were average. (R. at 246.) Her word knowledge, ability to analyze and synthesize visual information, and verbal reasoning skills fell at the low end of the average range. (R. at 254.) Plaintiff indicated that S.C.B. had the ability to read capital and small letters and could print her name and some letters. (R. at 213.) Ms. Elbine opined that S.C.B.'s

abilities may be underestimated on the basis of her distractibility. (R. at 247.) According to Ms. Pastore, S.C.B.'s articulation was similar to her peers. (R. at 251.) As such, substantial evidence supports the ALJ's determination that S.C.B. maintained less than marked limitation in acquiring and using information as a school-age child.

> 2. Substantial evidence supports the ALJ's determination that S.C.B. had less than marked limitation in attending and completing tasks.

The ALJ determined that S.C.B. had less than marked limitation in attending and completing tasks. (R. at 18.) Preschool children without an impairment in attending and completing tasks "should be able to pay attention when ... spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects." 20 C.F.R. § 416.926a(h)(2)(iii). This includes dressing oneself, feeding oneself, or putting away toys. *Id.* School-age children without an impairment in this domain should be able to: (1) follow directions, (2) remember and organize one's school materials, (3) complete classroom and homework assignments,(4) concentrate on details, (5) not make careless mistakes in one's work, (6) change your activities or routines without distracting oneself or others, (7) stay on task and in place when appropriate, (8) sustain one's attention well enough to participate in group sports, (9) read by oneself, (10) complete family chores, and (11) be able to complete a transition task without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv).

Here, Plaintiff testified that S.C.B. got distracted when completing tasks, would not follow instructions and did not pay attention. (R. at 33-35.) However, S.C.B. could cut, color, do puzzles and build with Legos. (R. at 267.) She kept busy on her own and worked on arts and

14

crafts projects. (R. at 217.) S.C.B. could take her medicine as directed. (R. at 48.) During her evaluation by Ms. Elbine, S.C.B. was cooperative during the exam and responded well to praise, though she was off task at times. (R. at 246.) S.C.B.'s speech pathologist indicated that S.C.B. was cooperative throughout the exam and followed her directions. (R. at 251.) Therefore, substantial evidence supported that ALJ's determination that S.C.B. experienced less than marked limitation in this domain.

> 3. Substantial evidence supports the ALJ's determination that S.C.B. had less than marked limitation in interacting and relating with others.

The ALJ determined that S.C.B. had less than marked limitation in interacting and relating with others. (R. at 20.) Preschool children without an impairment in interacting and relating to others should be able to socialize with children, as well as adults, start to develop friendships, express oneself with words, share, show affection and offer help. 20 C.F.R. § 416.926a(i)(2)(iii). A school-age child without an impairment in this domain should be able to develop more lasting friendships with children of the same age. 20 C.F.R. § 416.926a(i)(2)(iv).

Here, Plaintiff indicated that S.C.B. could make new friends, but could not get along with adults or teachers. (R. at 215.) She exhibited disrespect towards teachers, but sometimes got along with classmates and friends. (R. at 221.) She could make new friends. (R. at 170.) Further, S.C.B. could talk with family and friends. (R. at 212.) She enjoyed being with children of her age, showed affection towards other children and was sometimes affectionate towards her parents. (R. at 186.) She played pretend with other children and could play games like hide and seek. (R. at 186.) S.C.B. maintained normal sibling interactions. (R. at 267.) Therefore,

15

substantial evidence exists in the record to support the ALJ's determination regarding S.C.B.' ability to interact and relate to others.

> 4. Substantial evidence supports the ALJ's determination that S.C.B. had no limitation in moving about and manipulating objects.

The ALJ determined that S.C.B. had no limitation in moving about and manipulating objects. (R. at 21.) A preschool child without an impairment in moving about or manipulating objects should be able to walk and run with ease. 20 C.F.R. § 416.926a(j)(2)(iii). School-age children without an impairment in this domain should "move at an efficient pace about [one's] school, home, and neighborhood." 20 C.F.R. § 416.926a(j)(2)(iv).

Here, Plaintiff testified that S.C.B. could jump, jump rope and kick. (R. at 47.) S.C.B. could walk, run, throw a ball and dress/undress dolls or action figures. (R. at 169, 214.) She could catch a large ball, ride a bicycle and wind up a toy. (R. at 186.) Further, nothing in the record indicated that Plaintiff had any difficulty moving or manipulating objects. As such, substantial evidence supports the ALJ's decision finding no limitation in Plaintiff's ability in moving about and manipulating objects.

> 5. Substantial evidence supports the ALJ's determination that S.C.B. had no limitation in caring for herself.

The ALJ determined that S.C.B. had no limitation in caring for herself. (R. at 22.) Preschool children with no impairment in the domain of caring for oneself should "want to take care of many of [their] physical needs by [their] self *(e.g.*, putting on your shoes, getting a snack), and also want to try doing some things that [they] cannot do fully." 20 C.F.R.

16

§ 416.926a(k)(2)(iii). A school-age child with no impairment as to caring for oneself should be independent in most daily activates, but may need reminders to complete these activities. 20 C.F.R. § 416.926a(k)(2)(iv).

Here, Plaintiff indicated in her function reports that S.C.B. had the ability to take baths or showers without being held, brush her teeth, choose clothes by herself and eat by herself with a fork, knife and spoon. (R. at 171, 187.) Plaintiff also testified that S.C.B. could feed herself, use the toilet alone, brush her teeth, rinse herself in the bath and take her medicine as directed. (R. at 48.) S.C.B. was "still trying to ride a bike." (R. at 214.) She also tried to read on her own. (R. at 33.) As such, the ALJ's determination that S.C.B. had no limitation in caring for herself is supported by substantial evidence.

### 6. Substantial evidence supports the ALJ's determination that S.C.B. had no limitation in health and physical well-being.

The ALJ determined that S.C.B. had no limitation in health and physical well-being. (R. at 22.) This domain considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the claimant's function. 20 C.F.R. § 416.926a(l). "When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause 'extreme' limitation in your functioning, you will generally have an impairment(s) that 'meets' or 'medically equals' a listing." 20 C.F.R. § 416.926a(l)(1).

Here, nothing in the record indicates that Plaintiff suffered any health concerns other than her ADHD. S.C.B. was otherwise in good health and she. was the correct size for her age. (R. at

17

52.) The medical records fail to indicate any health concerns. As such, substantial evidence supports the ALJ's determination that S.C.B. experienced no limitation in this domain.

## VI. CONCLUSION

Because substantial evidence supports the ALJ's determination that S.C.B.'s condition did not functionally meet any of the listings, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 9) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 10) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk file this Report and Recommendation electronically, forward a copy to the Honorable John A. Gibney, send a copy to Plaintiff at her address of record and notify all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: September 9, 2013